## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JULIE LEASURE,
f/k/a JULIE SCHLAU,
an individual,

       Case No.: 8:23-cv-00391

      Plaintiff,

v.

HYUNDAI CAPITAL
AMERICA, INC., d/b/a
KIA MOTORS FINANCE,
a foreign profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.

_____/

## **COMPLAINT**

    **COMES NOW**, Plaintiff, JULIE LEASURE, f/k/a JULIE SCHLAU (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, HYUNDAI CAPITAL AMERICA INC., d/b/a KIA MOTORS FINANCE (hereinafter, "KIA"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support

1

thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.      This is an action brought by Plaintiff, an individual consumer, for damages for KIA's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein KIA credit-reported and subsequently verified its credit reporting of late and/or incomplete payment history information regarding a vehicle lease account on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Equifax, Experian, and Trans Union.  More specifically, despite Plaintiff paying on time every month, and despite Plaintiff advising KIA of its errors and disputing the reporting of such erroneous information directly to Equifax, Experian, and Trans Union, KIA *continued* to report the account furnished by KIA as late and/or with incomplete payment history for months in which Plaintiff paid the account furnished by KIA on time.

2.      Similarly, this is an action brought by an individual consumer for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each failed to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files published by Equifax, Experian, and Trans Union with respect to the account furnished by KIA. More specifically, Equifax, Experian, and Trans Union inaccurately, incompletely, and misleadingly credit reported a tradeline account furnished by KIA and reported such account as late and/or with incomplete payment history for months in which Plaintiff paid on time even after Plaintiff disputed

such information directly to Equifax, Experian, and Trans Union.

## JURISDICTION, VENUE & PARTIES

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq.*

4.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5.      Venue is proper in this District as the acts and transactions described herein originated and occurred in this District and Plaintiff resides in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

7.      At all material times herein, KIA is a foreign profit corporation existing under the laws of the state of California with its principal place of business located at 3161 Michelson Drive, Suite 1900, Irvine, California 92612.

8.      At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

9.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

10.     At all material times herein, Experian is a foreign limited liability company existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

3

## FCRA STATUTORY STRUCTURE

11.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information

4

disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

16.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer

in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

19.    At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

20.    At all material times herein, Defendants each credit report information concerning an automobile lease account furnished by KIA and referenced by account number ending -7173 (hereinafter, the "Account" or "KIA Account").

21.    At all material times herein, KIA is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

22.    At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

23.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

24. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

25. In or before April 2014, Plaintiff opened the KIA automobile lease Account.

26. Between April 2014 and February 2017, Plaintiff made all payments to KIA as required by the underlying automobile lease agreement and was never thirty (30) days past due—or more—on any monthly payments owed on the lease Account.

27. In or before January 2017, Plaintiff returned the leased vehicle to KIA.

28. On or about February 24, 2022, Plaintiff obtained copies of her consumer disclosure reports from Trans Union and Equifax.

29. On or about March 4, 2022, Plaintiff obtained a copy of her consumer disclosure report from Experian.

30. Despite Plaintiff paying her monthly payments on time to KIA and despite Plaintiff never being late on the Account, Trans Union reported inaccurate, incomplete, and materially misleading information with respect to the KIA Account.

31. More specifically, Trans Union reported late payment information on the Kia Account, starting with sixty (60) days late in October 2016 and escalating to one hundred twenty (120) days late from December 2015 through May 2016.

32. Additionally, despite Plaintiff paying her monthly payments on time to KIA and despite Plaintiff never being late on the Account, Equifax and Experian each reported incomplete and materially misleading information with respect to the KIA

Account.

33.    More Specifically, Equifax reported no positive payment information on Plaintiff's credit report, instead reporting "No Data Available" for every month the Account was open.

34.    Furthermore, Experian failed to include report positive payment information on the Account for the months prior to August 2016.

35.    Such reporting by Equifax and Experian is incomplete and materially misleading, as they each reported information regarding the Account yet failed to report Plaintiff's positive payment history.

## FIRST DISPUTE TO DEFENDANTS

36.    On or about March 14, 2022, Plaintiff sent a letter directly to KIA, Equifax, Experian, and TransUnion disputing Defendants' reporting of the Account and advising Defendants that their reporting of the account was incorrect and incomplete (hereinafter, Plaintiff's "First Dispute"). Please see true and correct copies of Plaintiff's First Dispute labeled as Exhibit "A".

37.    Specifically, Plaintiff First Dispute advised Defendants that Plaintiff made all required payments and was never late on the Account, that late payment information was incorrectly reported on Plaintiff's Trans Union report, and that Experian and Equifax were not reporting Plaintiff's positive payment information. *Id.*

38.    Plaintiff's First Dispute also advised that Plaintiff's online payment history contradicted Defendants' reporting of the Account as ever late or past-due. *Id.*

39.    Defendants each received Plaintiff's First Dispute.

40. Equifax, Experian, and Trans Union also communicated Plaintiff's First Dispute to KIA as required by the FCRA.

41. On or about March 21, 2022, Equifax sent a letter to Plaintiff in response to Plaintiff's First Dispute. Please see attached a true and correct copy of said letter labeled as Exhibit "B."

42. Equifax's response to Plaintiff's First Dispute asserted "THIS ACCOUNT IS CURRENTLY REPORTING PAID AS AGREED, WITH NO LATE PAYMENTS." *See* Ex. B at p. 4.

43. However, Equifax failed to mark the Account as disputed by Plaintiff in response to Plaintiff's First Dispute.

44. On or about March 25, 2022, KIA sent a letter to Plaintiff in response to Plaintiff's First Dispute. Please see attached a true and correct copy of said letter attached as Exhibit "C."

45. Despite Plaintiff's First Dispute letter advising KIA and Defendants that Plaintiff's online KIA account portal showed a payment history contradicting Defendants' reporting of the Account, KIA's letter dated March 25, 2022 asserted "you have not provided sufficient information for us to begin an investigation." *See* Ex. C.

46. On or about March 29, 2022, Experian sent a letter to Plaintiff in response to Plaintiff's First Dispute which referred Plaintiff to an enclosed copy of Plaintiff's Experian credit report. Please see attached a true and correct copy of said response letter and relevant pages from the enclosed credit report labeled as Exhibit

"D."

47.     Despite Plaintiff's First Dispute letter advising KIA and Defendants that Plaintiff's online KIA account portal showed a payment history contradicting Defendants' reporting of the Account, Experian and KIA *still* failed to report Plaintiff's positive payment information and failed to mark the Account as disputed by Plaintiff. *Id.*

48.     On or about April 13, 2022, Trans Union sent a letter to Plaintiff in response to Plaintiff's First Dispute.  Please see attached a true and correct copy of said response letter labeled as Exhibit "E."

49.     Despite Plaintiff's First Dispute letter advising KIA and Defendants that Plaintiff's online KIA account portal showed a payment history contradicting Defendants' reporting of the Account and that Trans Union's reporting of the Account with late payment information was incorrect, Trans Union and KIA "updated" the Account and still reported the following inaccurate, incomplete, and/or materially misleading information:

    a.      60 days late in October 2015;

    b.      90 days late in November 2015;

    c.      120 days late in December 2015 through May 2016;

    d.      Pay Status: >Paid, Closed; was 90 days past due date<; and

    e.      >Maximum Delinquency of 120 days in 12/2015 and 5/2016<.

*See* Ex. E at p. 6.

50.     Trans Union's and KIA's reporting of the Account as late or past-due at

any time between October 2015 and May 2016 is false, inaccurate, and misleading because Plaintiff made all required payments and was never sixty (60) days late—or more—on the Account.

51.    On or about April 28, 2022, Plaintiff obtained copies of her consumer disclosure reports from Trans Union and Equifax.

52.    Despite Plaintiff never being late or past due on the Account, despite Plaintiff advising Equifax that she was never late through Plaintiff's First Dispute, and despite Equifax's previous assertion that it was not reporting any negative or late payment information on the Account, Plaintiff's Equifax report showed the KIA Account as "NOT_THAN_FOUR_PAYMENTS_PAST_DUE."  Please see attached true and correct copies of relevant pages from said Equifax report labeled as Exhibit "F."

53.    Again, Plaintiff was never late on the Account and made all required payments to KIA.  Equifax's reporting is therefore inaccurate, incomplete, and materially misleading.

54.    Additionally, Equifax *still* failed to include any positive payment history regarding the KIA Account and *still* failed to mark the Account as disputed by Plaintiff.

55.    Similarly, despite Plaintiff never being late or past due on the Account and despite Plaintiff advising Trans Union that she was never late through Plaintiff's First Dispute, Trans Union continued to report late payment information for the months of October 2015 through May 2016 and included a pay status "was 90 days past due date."  Please see attached true and correct copies of relevant pages from said

Equifax report labeled as Exhibit "G."

56.     On or about May 2, 2022, Plaintiff obtained a copy of her consumer disclosure report from Experian.

57.     Despite Plaintiff never being late or past due on the Account, and despite Plaintiff advising Experian that she made all required payments on the Account through her First Dispute, Experian still failed to report any positive payment history on the Account and still failed to mark the Account as disputed by Plaintiff.

58.     Plaintiff was never late on the Account and made all required payments to KIA. Experian's reporting is therefore inaccurate, incomplete, and materially misleading.

## SECOND DISPUTE TO DEFENDANTS

59.     On or about March 14, 2021, Plaintiff sent *another* dispute letter directly to KIA, Equifax, Experian, and Trans Union, with the assistance of her attorney, *again* advising Defendants that their reporting of the Account was incorrect and incomplete (hereinafter, Plaintiff's "Second Dispute").

60.     Plaintiff enclosed a copy of her Account payment history with her Second Dispute.  Please see true and correct copy of Plaintiff's Second Dispute and its enclosures labeled as Composite Exhibit "H".

61.     Plaintiff's Second Dispute *again* advised Defendants that Plaintiff was never 60 days (or more) late on the Account and specifically advised: (1) Trans Union's reporting of the Account as delinquent was inaccurate and contained errors because Plaintiff was never late on the Account; (2) Equifax's reporting of the Account as not

more than four late payments was inaccurate and contained errors because Plaintiff was never late on the Account and Equifax failed to show positive payment history; and (3) Experian's reporting of the Account was inaccurate and incomplete because Experian failed to report Plaintiff's positive payment history on the Account. *See* Ex. H.

62.    Each Defendant received Plaintiff's Second Dispute.

63.    Equifax, Experian, and Trans Union also communicated Plaintiff's Second Dispute to KIA as required by the FCRA.

64.    On or about June 14, 2022, Equifax sent a letter to Plaintiff's attorney in response to Plaintiff's Second Dispute. Please see attached a true and correct copy of said letter labeled as Exhibit "I."

65.    Equifax's response to Plaintiff's Second Dispute asserted "THE CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY" and both KIA and Equifax reported the Account as "was 90-119 Days Past Due." *See* Ex. I at p. 5.

66.    Equifax *still* failed to report Plaintiff's positive payment history and *still* failed to mark the Account as disputed by Plaintiff in response to Plaintiff's Second Dispute. *Id.*

67.    Plaintiff was never late on the Account and made all required payments to KIA. Equifax's reporting is therefore inaccurate, incomplete, and materially misleading.

68.    On or about June 15, 2022, Trans Union sent a letter to Plaintiff in

response to Plaintiff's Second Dispute.

69.    Although Trans Union's dispute results showed that Trans Union and KIA updated their reporting of the Account to finally show as "OK" between June 2015 and January 2017 in the monthly payment history, Trans Union and KIA *still* reported the Account as "was 90 days past due date" in the "Pay Status." Please see attached a true and correct copy of Trans Union's response letter labeled as Exhibit "J."

70.    On or about June 17, 2022, Experian sent a letter to Plaintiff in response to Plaintiff's Second Dispute.

71.    Notably, despite Plaintiff never being late or past due on the Account, despite Plaintiff advising Experian that she was never late through Plaintiff's First Dispute, despite Plaintiff providing her payment history on the Account with her Second Dispute, and despite Experian previously reporting no late payment information on the Account, Experian—for the first time—reported the Account as thirty (30) days late in June 2017 and sixty (60) days late in July 2017. Please see attached a true and correct copy of Experian's response letter labeled as Exhibit "K" at p. 3.

72.    On or about June 9, 2022, Plaintiff obtained copies of her consumer disclosure reports from Trans Union and Equifax.

73.    Despite Plaintiff's repeated disputes, Equifax and KIA continued to report the KIA Account as "NOT_MORE_THAN_FOUR_PAYMENTS _PAST_DUE."

74.    Despite Plaintiff's repeated disputes, Trans Union and KIA continued to report the KIA Account as "was 90 days past due date."

75.    On or about July 15, 2022, Plaintiff obtained a copy of her consumer disclosure report from Experian.

76.    Despite Plaintiff's repeated disputes, Experian and KIA continued to report the KIA Account as thirty (30) days late in June 2017 and sixty (60) days late in August 2017.

77.    In September 2022, Plaintiff obtained copies of her consumer disclosure reports from Equifax, Experian, and Trans Union.

78.    Despite Plaintiff's repeated disputes, Equifax and KIA continued to report the KIA Account as "NOT_MORE_THAN_FOUR_PAYMENTS _PAST_DUE."

79.    Despite Plaintiff's repeated disputes, Experian and KIA continued to report the KIA Account as thirty (30) days late in June 2017 and sixty (60) days late in August 2017.

80.    Despite Plaintiff's repeated disputes, Trans Union and KIA continued to report the KIA Account as "was 90 days past due date."

### THIRD DISPUTE TO DEFENDANTS

81.    On or about December 6, 2022, Plaintiff called Equifax via telephone, spoke with Equifax's agent, employee, or representative, and *again* disputed Equifax's and KIA's reporting of the Account as not more than four payments past due.

82.    On or about December 6, 2022, Plaintiff called Experian via telephone,

spoke with Experian's agent, employee, or representative, and *again* disputed Experian's and KIA's reporting of the Account as late in June 2017 and August 2017.

83.    On or about December 6, 2022, Plaintiff called Trans Union via telephone, spoke with Trans Union's agent, employee, or representative, and *again* disputed Trans Union's and KIA's reporting of the Account as 90 days past due at any time.

84.    On or about December 15, 2022, Experian sent a letter to Plaintiff in response to her phone dispute.

85.    Despite Plaintiff's repeated disputes advising Experian and KIA that Plaintiff was never thirty (30) days late—or more—on the Account at any time, Experian and KIA continued to report the Account as thirty (30) days late in June 2017 and sixty (60) days late in July 2017.  Please see attached a true and correct copy of Experian's response letter labeled as Exhibit "L."

86.    On or about December 16, 2022, Equifax sent a letter to Plaintiff in response to her phone dispute.

87.    Despite Plaintiff's repeated disputes advising Equifax and KIA that Plaintiff was never thirty (30) days late—or more—on the Account at any time, Equifax and KIA reported the Account as "was 90-119 Days Past Due."  Please see attached true and correct copies of relevant pages fom Equifax's response letter labeled as Exhibit "M."

88.    On or about December 21, 2022, Trans Union sent a letter to Plaintiff in response to her phone dispute.

89.     Despite Plaintiff's repeated disputes advising Trans Union and KIA that Plaintiff was never thirty (30) days late—or more—on the Account at any time, Trans Union and KIA now reported the Account as "was 60 days past due."  Please see attached a true and correct copies of relevant pages from Trans Union's response letter labeled as Exhibit "N."

90.     In January 2023, Plaintiff obtained copies of her consumer disclosure reports from Equifax, Experian, and Trans Union.

91.     Despite Plaintiff's repeated disputes, Equifax and KIA continued to report the Account as "NOT_MORE_THAN_FOUR_PAYMENTS _PAST_DUE."

92.     Despite Plaintiff's repeated disputes, Experian and KIA continued to report the Account as thirty (30) days late in June 2017 and sixty (60) days late in August 2017.

93.     Despite Plaintiff's repeated disputes, Trans Union and KIA continued to report the Account as "was 60 days past due date."

94.     Overall, Defendants' reporting of the Account following Plaintiff's disputes was—and continues to be—inconsistent, inaccurate, and materially misleadingly because Plaintiff was never thirty (30) days or more past due on the Account.

## DAMAGES

95.     As a result of Defendants' inaccurate, incomplete, and misleading reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect

reporting of the Account if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

96.    Between approximately March 2021 and the date of this Complaint, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders which included the KIA Account reported as a late and derogatory tradeline account and which Defendants failed to mark as disputed by Plaintiff.

97.    More specifically, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information between October 2021 and the date of this Complaint resulting in hard inquiries, account review inquires, and promotional inquires on Plaintiff's credit report as maintained by Equifax, Experian, and Trans Union.

98.    Additionally, after the erroneous KIA Account information was added to Plaintiff's credit reports, Plaintiff's credit limits were reduced and Plaintiff was denied applications for credit limit increases.

99.    Overall, Plaintiff suffered damage to her credit score and credit reputation as a result of Defendants' conduct.

100.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC, d/b/a Swift Law PLLC as well as Bannon Law Group for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

101.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to remedy Defendants' reporting errors—and despite Plaintiff spending time sending disputes and enclosing supporting documents—Plaintiff must simply endure Defendants' inaccurate and unlawful reporting of the Account.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>
## (As to KIA Only)

Plaintiff re-alleges paragraphs one (1) through one hundred one (101) as if fully restated herein and further states as follows:

102.    KIA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b) by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's dispute, failing to review all relevant information regarding the same, and failing to request Equifax, Experian, and Trans Union accurately update the Account in Plaintiff's credit reports and credit file after re-investigating Plaintiff's disputes.

103.    More specifically, Plaintiff made all payments to KIA between April 2017 and February 2017 as required by the underlying automobile lease agreement and was never thirty (30) days past due—or more—on any monthly payments owed on the lease Account.

104.    In or before January 2017, Plaintiff returned the leased vehicle to KIA.

105.    Prior to Plaintiff's First Dispute to Defendants, KIA reported the Account to Trans Union as sixty (60) to one hundred twenty (120) days late for the months of October 2015 through May 2016.

106.    Plaintiff was not sixty (60) days—or more—past due on the Account between October 2015 and May 2016; therefore, such reporting is false, inaccurate, and misleading.

107.    Following Plaintiff's First Dispute, Second Dispute, and third telephone disputes—which were each communicated to KIA through Equifax, Experian, and Trans Union—KIA failed to conduct reasonable re-investigations and KIA continued to report inaccurate and inconsistent information to Equifax, Experian, and Trans Union.

108.    More specifically, following Plaintiff's First Dispute, Second Dispute, and third telephone dispute, KIA reported the Account to Equifax as "NOT_MORE_THAN_FOUR_PAYMENTS_PAST_DUE," which is inaccurate, and KIA also failed to mark the Account as dispute by Plaintiff.

109.    Additionally, following Plaintiff's First Dispute, KIA reported the Account to Trans Union with the following inaccurate, incomplete, and/or materially misleading information:

   a.    60 days late in October 2015;

   b.    90 days late in November 2015;

   c.    120 days late in December 2015 through May 2016;

      d.    Pay Status: >Paid, Closed; was 90 days past due date<; and

      e.    >Maximum Delinquency of 120 days in 12/2015 and 5/2016<.

*See* Ex. E at p. 6.

110.   Next, following Plaintiff's Second Dispute, KIA reported the Account to Trans Union as "was 90 days past due" which is inaccurate, incomplete, and/or materially misleading and KIA *again* failed to mark the Account as disputed by Plaintiff.

111.   Following Plaintiff's Third Dispute, KIA reported the Account to Trans Union as "was 60 days past due" which is still inaccurate, incomplete, and/or materially misleading, and KIA *again* failed to mark the Account as disputed by Plaintiff.

112.   Following Plaintiff's Second Dispute and Third Dispute, KIA reported the Account to Experian as thirty (30) days late in June 2017 and sixty (60) days late in July 2017 which is inaccurate, incomplete, and/or materially misleading, and KIA *again* failed to mark the Account as disputed by Plaintiff.

113.   Plaintiff provided sufficient evidence to Defendants—including KIA—through her dispute letters, telephone calls, and supporting proof of payment to prove that Plaintiff was not late on the Account.

114.   Overall, KIA reported inaccurate, incomplete, inconsistent, and materially misleading information to Equifax, Experian, and Trans Union in response to Plaintiff's repeated disputes.

115.   KIA's refusal to request that Equifax, Experian, and Trans Union update

the tradeline associated with the Account in response to Plaintiff's disputes was intentionally, willfully, and knowingly done as KIA clearly possessed knowledge of Plaintiff's payment history on the Account.

116.    KIA's re-investigations were not conducted in good faith.

117.    KIA's re-investigations were not conducted reasonably.

118.    KIA's re-investigations were not conducted using all information and documents reasonably available to KIA.

119.    As a result of KIA's inaccurate, incomplete, and misleading reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

120.    Additionally, after the erroneous KIA Account information was added to Plaintiff's credit reports, Plaintiff's credit limits were reduced and Plaintiff was denied applications for credit limit increases.

121.    Overall, Plaintiff suffered damage to her credit score and credit reputation as a result of KIA's conduct.

122.    KIA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

123.    KIA's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles

Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (As to Equifax, Experian, and Trans Union Only)

Plaintiff re-alleges paragraphs one (1) through one hundred one (101) as if fully restated herein and further states as follows:

124.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

125.    Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Equifax's, Experian's, and Trans Union's credit reports regarding the KIA Account.

126.    More specifically, Equifax, Experian, and Trans Union each received Plaintiff's First Dispute, Second Dispute, and third telephone disputes, wherein Plaintiff advised Defendants that Plaintiff made all payments to KIA as required by the underlying automobile lease agreement and was never thirty (30) days past due—or more—on any monthly payments owed on the lease Account.

127.    Plaintiff provided sufficient evidence to Defendants through her dispute

letters, telephone calls, and supporting proof of payment to prove that Plaintiff was not late on the Account.

128.    Following Plaintiff's First Dispute, Second Dispute, and third telephone dispute, Equifax continued reporting the Account as "NOT_MORE_THAN_FOUR_ PAYMENTS_PAST_DUE," which is inaccurate and materially misleading, and Equifax also failed to mark the Account as dispute by Plaintiff.

129.    Following Plaintiff's Second Dispute and Third Dispute, Experian reported the Account as thirty (30) days late in June 2017 and sixty (60) days late in July 2017 which is inaccurate, incomplete, and/or materially misleading, and Experian failed to mark the Account as disputed by Plaintiff.

130.    Following Plaintiff's First Dispute, Trans Union reported the Account with the following inaccurate, incomplete, and/or materially misleading information:

      a.    60 days late in October 2015;

      b.    90 days late in November 2015;

      c.    120 days late in December 2015 through May 2016;

      d.    Pay Status: >Paid, Closed; was 90 days past due date<; and

      e.    >Maximum Delinquency of 120 days in 12/2015 and 5/2016<.

*See* Ex. E at p. 6.

131.    Next, following Plaintiff's Second Dispute, Trans Union reported the Account as "was 90 days past due" which is inaccurate, incomplete, and/or materially misleading and KIA *again* failed to mark the Account as disputed by Plaintiff.

132.    Following Plaintiff's Third Dispute, Trans Union reported the Account

as "was 60 days past due" which is still inaccurate, incomplete, and/or materially misleading, and Trans Union failed to mark the Account as disputed by Plaintiff.

133.   Overall, Equifax, Experian, and Trans Union maintained credit files concerning Plaintiff and published information regarding Plaintiff to third parties which included Defendants' inaccurate reporting of the derogatory KIA Account.

134.   Equifax, Experian, and Trans Union clearly failed to maintain procedures to maintain maximum possible accuracy. If Equifax, Experian, and Trans Union maintained—and followed—such procedures, Equifax's, Experian's, and Trans Union's reporting of the Account would not have included inconsistent, conflicting information that is both erroneous and inaccurate.

135.   Equifax's, Experian's, and Trans Union's reporting of the Account was patently inaccurate and further evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

136.   As a result of Equifax's, Experian's, and Trans Union's inaccurate, incomplete, and misleading reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

137.   Between approximately March 2021 and the date of this Complaint, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit

information to Plaintiff's current creditors and potential lenders which included the KIA Account reported as a late and derogatory tradeline account and failed to mark the Account as disputed.

138. More specifically, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information between October 2021 and the date of this Complaint resulting in hard inquiries, account review inquires, and promotional inquires on Plaintiff's credit report as maintained by Equifax, Experian, and Trans Union.

139. Additionally, after the erroneous KIA Account information was added to Plaintiff's credit reports, Plaintiff's credit limits were reduced and Plaintiff was denied applications for credit limit increases.

140. Overall, Plaintiff suffered damage to her credit score and credit reputation as a result of Defendants' conduct.

141. Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

142. Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i**
**(As to Equifax, Experian, and Trans Union Only)**

Plaintiff re-alleges paragraphs one (1) through one hundred one (101) as if fully restated herein and further states as follows:

143.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Sections: 1681i(a)(1) by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and Section 1681i(a)(5) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

144.    Equifax, Experian, and Trans Union willfully and/or negligently refused to properly re-investigate upon receiving Plaintiff's First Dispute, Second Dispute, and third telephone disputes.

145.    More specifically, Equifax, Experian, and Trans Union each received Plaintiff's First Dispute, Second Dispute, and third telephone disputes, wherein Plaintiff advised Defendants that Plaintiff made all payments to KIA as required by the underlying automobile lease agreement and was never thirty (30) days past due— or more—on any monthly payments owed on the lease Account.

146. Plaintiff provided sufficient evidence to Defendants through her dispute letters, telephone calls, and supporting proof of payment to prove that Plaintiff was not late on the Account.

147. Notably, in response to Plaintiff's First Dispute, Equifax sent a letter to Plaintiff advising that Equifax was not reporting any negative, late payment information on the Account.

148. However, following Plaintiff's First Dispute, Second Dispute, and third telephone dispute, Equifax reported the Account as "NOT_MORE_THAN_FOUR_PAYMENTS_PAST_DUE," which is inaccurate and materially misleading, and Equifax also failed to mark the Account as disputed by Plaintiff.

149. Following Plaintiff's Second Dispute and Third Dispute, Experian reported the Account as thirty (30) days late in June 2017 and sixty (60) days late in July 2017, which is inaccurate, incomplete, and/or materially misleading, and Experian failed to mark the Account as disputed by Plaintiff.

150. Following Plaintiff's First Dispute, Trans Union reported the Account with the following inaccurate, incomplete, and/or materially misleading information:

      a.    60 days late in October 2015;

      b.    90 days late in November 2015;

      c.    120 days late in December 2015 through May 2016;

      d.    Pay Status: >Paid, Closed; was 90 days past due date<; and

      e.    >Maximum Delinquency of 120 days in 12/2015 and 5/2016<.

*See* Ex. E at p. 6.

151.   Next, following Plaintiff's Second Dispute, Trans Union reported the Account as "was 90 days past due," which is inaccurate, incomplete, and/or materially misleading, and KIA *again* failed to mark the Account as disputed by Plaintiff.

152.   Following Plaintiff's Third Dispute, Trans Union reported the Account as "was 60 days past due," which is still inaccurate, incomplete, and/or materially misleading, and Trans Union failed to mark the Account as disputed by Plaintiff.

153.   Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's disputes.

154.   As such, to the extent Equifax, Experian, or Trans Union conducted any re-investigation in response to Plaintiff's First Dispute, Second Dispute, and third telephone dispute, Equifax's, Experian's, and Trans Union's re-investigation were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate, and Equifax, Experian, and Trans Union each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files following Plaintiff's disputes.

155.   Additionally, Equifax, Experian, and Trans Union each failed to mark the KIA Account as disputed in response to Plaintiff's repeated disputes.

156.   Equifax's, Experian's, and Trans Union's, re-investigation of Plaintiff's disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union because each clearly received Plaintiff's repeated disputes and supporting proof of payment.

157.   Instead of considering information supplied by Plaintiff through her disputes, Equifax, Experian, and Trans Union wholly ignored Plaintiff's disputes and relied on conflicting, inaccurate information purportedly verified or updated by KIA regarding the Account following each dispute.

158.   Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

159.   Equifax's, Experian's, and Trans Union's re-investigations were *per se* deficient by reason of these failures in Trans Union's, Equifax's, and Experian's reinvestigations of Plaintiff's disputes and the Account.

160.   As a result of Equifax's, Experian's, and Trans Union's inaccurate, incomplete, and misleading reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

161.   Between approximately March 2021 and the date of this Complaint, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders which included the KIA Account reported as a late and derogatory tradeline account and which Defendants failed to mark as disputed by Plaintiff.

162.   More specifically, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information between October 2021 and the date of this

Complaint resulting in hard inquiries, account review inquires, and promotional inquires on Plaintiff's credit report as maintained by Equifax, Experian, and Trans Union.

163.    Additionally, after the erroneous KIA Account information was added to Plaintiff's credit reports, Plaintiff's credit limits were reduced and Plaintiff was denied applications for credit limit increases.

164.    Overall, Plaintiff suffered damage to her credit score and credit reputation as a result of Defendants' conduct.

165.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

166.    Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Section 1681i, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully request an entry of:

a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

31

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

*~and~*

**BANNON LAW GROUP**

*/s/ G. Tyler Bannon*

32

**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-Counsel for Plaintiff*